## STATE OF NORTH CAROLINA v. JOSE RIERA
### No. 6912SC396

(Filed 22 October 1969)

**1. Criminal Law § 159— statement of evidence in narrative form**

Effective 1 July 1969 for appeals docketed for hearing in the Court of Appeals at the Fall Term 1969 and thereafter, the appeal is subject to dismissal for failure of appellant to provide a statement of the evidence in the record on appeal in narrative form. Court of Appeals Rule No. 19(d).

**2. Narcotics § 4— possession for purpose of sale — prima facie case — sufficiency of evidence**

In this prosecution for possession of narcotic drugs for the purpose of sale, the State's evidence *is held* sufficient to be submitted to the jury under the provision of G.S. 90-113.2(5) making the possession of 100 or more capsules prima facie evidence that such possession is for the purpose of sale, where it tends to show that 205 capsules were found in defendant's home, that three or four of the capsules were tested and found to contain barbiturates, and that all of the capsules were of the same color, and had the same manufacturer's name, code letter and number.

**3. Narcotics § 1— unauthorized possession — possession for sale — separate offenses**

The misdemeanor of unauthorized possession of barbiturates, G.S. 90-113.2(3), is not a lesser included offense of the felony of possession of barbiturates for the purpose of sale set forth in G.S. 90-113.2(5).

**4. Criminal Law § 101— motion for mistrial — entry of outsider into jury room**

In this prosecution for possession of barbiturates for the purpose of sale, the trial court did not err in the denial of defendant's motion for mistrial for the reason that a person who was not a juror entered the jury room while the jury was deliberating, where the record shows that when the person entered the jury room the jurors became silent and nothing was said.

APPEAL by defendant from *Canaday, J.,* 3 February 1969 Session of Superior Court held in CUMBERLAND County.

Defendant, upon his plea of not guilty, was tried by a jury on the following bill of indictment:

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT, That Jose A. Riera, late of the County of Cumberland, on or about the 14th day of October, 1968, with force and arms, at and in the County aforesaid, unlawfully, willfully and feloniously did possess and have under his control at 312 Elizabeth Street, Fayetteville, North Carolina, a barbiturate drug, to wit: 205 capsules of a barbiturate preparation known as Tuinal, for the purpose of sale, barter, exchange, supplying,

giving away and furnishing, contrary to the form of the Statute in such case made and provided and against the peace and dignity of the State."

Upon returning a verdict of guilty of the offense of possession of narcotic drugs for the purpose of sale, the jury, on motion of the defendant, was polled and all the jurors assented to the verdict. From judgment of imprisonment for not less than two nor more than four years, the defendant appealed to the Court of Appeals.

*Attorney General Robert Morgan, Trial Attorney J. Bruce Morton, and Staff Attorney James E. Magner, Jr., for the State.*

*Downing, Downing & David by Edward J. David for defendant appellant.*

MALLARD, C.J.

[1]   The State properly moved to dismiss the appeal of the defendant for his failure to comply with the requirements of Rule 19(d) of the Rules of Practice in the Court of Appeals in that he failed to provide a statement of the evidence in the record on appeal in narrative form within the time allowed for docketing his appeal. Rule 19(d) was prescribed and adopted as an amendment to Rule 19 by the Supreme Court of North Carolina, in conference, on 11 February 1969, pursuant to the authority contained in G.S. 7A-33, and reads as follows:

"(d)  Evidence — How Stated.  The evidence in case on appeal shall be in narrative form, and not by question and answer, except that a question and answer, or a series of them, may be set out when the subject of a particular exception. When this rule is not complied with this Court will, in its discretion, hear the appeal, dismiss the appeal or remand for a settlement of the case on appeal to conform to this rule. The stenographic transcript of the evidence in the trial court may not be used as an alternative to narration of the evidence."

The foregoing rule became effective on 1 July 1969 and applies to all appeals docketed for hearing in the Court of Appeals at the Fall Session 1969 and thereafter.

Defendant by addendum to the record filed part of the testimony of the witnesses in narrative form on 29 August 1969 in addition to having filed the entire transcript of the testimony at the time he docketed the record on appeal on 19 June 1969. The solicitor stipulated that the testimony of the witnesses contained in the addendum "is accurate according to the transcript of the record of trial

prepared in the case of North Carolina versus Jose Riera." Under these circumstances, we decide the appeal on its merits.

**[2]**    The evidence for the State tended to show that on 14 October 1968 the defendant and his wife were at home in Spring Lake, North Carolina, when officers arrived with a search warrant to search for marijuana. Upon searching the defendant's home, the officers found two hundred and five capsules and a quantity of envelopes in the top left drawer of a chest of drawers in the only bedroom in the house. Each capsule was half reddish-orange and the other half blue. The capsules were described in the evidence as Tuinal. "Tuinal" is the brand name of capsules manufactured by Eli Lilly and Company containing a combination of amytal sodium and seconal sodium. Three or four of these capsules were chemically tested and found to contain the barbiturates, seconal and amytal. The remainder of the capsules were not chemically tested. The addendum to the record containing the stipulated narrative of the evidence does not so indicate, but the transcript of the testimony reveals that the name "Eli Lilly" appeared on each capsule, and each capsule contained Lilly's code letter and number. These type capsules are sometimes referred to as "blue bonnets or red bonnets."

The defendant offered evidence tending to show that he was in the army stationed at Fort Bragg; that three or four weeks before the sheriff and other officers searched his home he found the capsules, along with the envelopes, behind the service club at Fort Bragg; that he did not know what they were; that he did not intend to sell or use them; and that he was going to keep them until he found out what they were and eventually throw them out.

Defendant assigns as error the failure of the court to allow his motion for judgment as of nonsuit. Defendant contends that the witnesses did not testify that all of the capsules contained barbiturates, and, therefore, the prima facie rule set forth in G.S. 90-113.2(5) is not applicable. We hold that the testimony that all of the capsules were of the same color, had the same manufacturer's name, code letter and number is some evidence that all of the capsules contained barbiturates.

The applicable rule is stated in *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469 (1968), as follows:

> "Motion to nonsuit requires the trial court to consider the evidence in its light most favorable to the State, take it as true, and give the State the benefit of every reasonable inference to be drawn therefrom. *State v. Cook,* 273 N.C. 377, 160 S.E. 2d

49; *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679; *State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44. Regardless of whether the evidence is direct, circumstantial, or both, if there is evidence from which a jury could find that the offense charged has been committed and that defendant committed it, the motion to nonsuit should be overruled."

Applying this rule to the factual situation in this case, we are of the opinion and so hold that there was ample evidence to require submission of this case to the jury.

The pertinent parts of the statute, G.S. 90-113.2, under which the defendant is indicted, reads:

"It shall be unlawful:

\*        \*        \*

"(5)  For any person to possess for the purpose of sale, barter, exchange, dispensing, supplying, giving away, or furnishing any barbiturate or stimulant drugs; and, provided, the possession of one hundred or more tablets, capsules or other dosage forms containing either barbiturate or stimulant drugs, or a combination of both, shall be prima facie evidence that such possession is for the purpose of sale, barter, exchange, dispensing, supplying, giving away, or furnishing."

The punishment is set out in G.S. 90-113.8(a) which provides that one who violates G.S. 90-113.2(5), relating to the illegal possession of barbiturate drugs "for the purpose of sale, barter, exchange, dispensing, supplying, giving away, or furnishing," shall be guilty of a felony. Section (b) of this statute provides that all other violations of G.S. 90-113.2 shall be misdemeanors.

**[3]**  Defendant assigns as error the failure of the judge to charge the jury that they could return a verdict against the defendant of guilty of a lesser included offense. The defendant argues that G.S. 90-113.8 sets forth two categories of penalties. The first category, says the defendant, deals with the possession for the purpose of sale, etc., which makes the violation a felony, and "(t)he second category deals with unauthorized possession of same which is a misdemeanor. The defendant submits that the second category (G.S. 90-113.8(b) is a lesser included offense of the first category. (G.S. 90-113.8(a)."

G.S. 90-113.8(b) reads as follows:

"(b) Any person who violates, or conspires with, aids, abets, or procures another to violate, any provision of this article, other than G.S. 90-113.2(5), shall be guilty of a misdemeanor and upon conviction shall be punished by a fine of not more

than one thousand dollars ($1,000.00), or by imprisonment for not more than two years, or both, in the discretion of the court. Upon a second or subsequent conviction for a violation of any provision of this article, other than G.S. 90-113.2(5), the defendant shall be guilty of a felony and shall be fined or imprisoned, or both, in the discretion of the court."

This section does not provide that the misdemeanor of "unauthorized possession" is a lesser included offense of the felony defined in G.S. 90-113.8(a). What G.S. 90-113.8(b) refers to is "any provisions of this article, other than G.S. 90-113.2(5)." There is a separate provision [G.S. 90-113.2(3)] of this article, a violation of which, under the provisions of G.S. 90-113.8(b), it is made a misdemeanor:

> "(3) For any person to possess a barbiturate or stimulant drug unless such person obtained such barbiturate or stimulant drug in good faith on the prescription of a practitioner in accordance with subdivision (1) a or in accordance with subdivision (1) c of this section or in good faith from a person licensed by the laws of any other state or the District of Columbia to prescribe or dispense barbiturate or stimulant drugs."

The Supreme Court has held in *State v. Cofield*, 247 N.C. 185, 100 S.E. 2d 355 (1957), that:

> "G.S. 18-50 makes the possession for the purpose of sale of illicit liquor a general misdemeanor. G.S. 18-48 provides that the possession of whisky upon which the taxes imposed by the laws of Congress of the United States or by the laws of this State have not been paid is a general misdemeanor. Each statute creates a specific criminal offense, and a violation of G.S. 18-48 is not a lesser offense included in the offense defined in G.S. 18-50."

We think that the situation in this case is analogous to the rule set forth above in *Cofield*. G.S. 90-113.2(5), which was enacted in 1965, makes the possession of barbiturates for the purpose of sale a felony. G.S. 90-113.2(3), which was enacted in 1959, provides that the possession of barbiturates is a misdemeanor. Each of these sections of this statute was enacted at different sessions of the General Assembly, and each creates a specific criminal offense, and the violation of G.S. 90-113.2(3) is not a lesser offense included in G.S. 90-113.2(5).

[4] Defendant assigns as error the failure of the court to allow his motion for a mistrial for the reason that another person was in

the jury room other than the twelve jurors during their deliberations. The record does not support defendant's contention. All the record shows in this connection is that "(a) female entered the jury room while the jury was in its deliberations. His Honor, the Judge, immediately instructed the bailiff to return the jury to the open courtroom. The Judge questioned the jurors in open Court and asked them what happened when this female person entered the jury room. The foreman answered that the jury became silent and nothing was said. The defendant at this point made motion for a mistrial. The motion was denied."

The record reveals that when the female entered the jury room, the jurors became silent. Nothing was said. Certainly the record does not show that this female person was in the jury room "during their deliberations." It is clear that there was an interruption of the deliberations of the jury by this female's entry, but there is nothing in the record to indicate any other improper conduct on the part of the female. She apparently just walked in the jury room without being aware that the jury was there. The trial judge investigated immediately and by his ruling found nothing prejudicial to defendant. In addition, no exception was taken to the denial of defendant's motion for a mistrial. Prejudicial error is not made to appear.

No error.

MORRIS and HEDRICK, JJ., concur.